UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| EFREN GARZA and SARA GARZA | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | C.A. NO. _____ |
| | § | |
| HUDSON SPECIALTY INSURANCE | § | |
| COMPANY | § | |
| Defendant. | § | |

## HUDSON SPECIALTY INSURANCE COMPANY'S NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. § 1332(a) AND 28 U.S.C. § 1441(a)

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

**COMES NOW**, Defendant Hudson Specialty Insurance Company ("Hudson") and files its Notice of Removal Pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. §1441(a) and would show unto the Court the following:

# I.
## Overview

1.     On June 29, 2017, the Plaintiffs, Efren Garza and Sara Garza, filed suit in State District Court: Cause No. C-2899-17-J in Hidalgo County, Texas. On July 14, 2017, Hudson was served with the Citation and Petition. Now, within 30 days of when Hudson was served, Hudson files its Notice of Removal under 28 U.S.C. Section 1332(a) and 28 U.S.C. § 1441(a).

2.     This Removal is proper because there is complete diversity of citizenship and when properly aggregating the Plaintiffs' claims and damages, the amount in controversy exceeds $75,000, exclusive of interest and costs.

## II.
## Factual Background

3.      This case arises from one event:  a March 26, 2015 hail storm and/or windstorm in Hidalgo County, Texas ("the Storm").  Plaintiffs allege that the Storm caused damage to properties which they jointly own in Hidalgo County, *which Hudson believes are conjoined and may be part of the same structure.*  As a result, both Plaintiffs seek benefits under one Hudson Policy, No. HBD 10007703 (sometimes referred to as "the Policy"), as well as recovery for their extra-contractual claims.

4.      While Plaintiffs allege that they are both insureds under the Policy, in the Application to obtain the coverage, which was signed and submitted by Sara Garza, coverage was requested for "Pizza Alley, Inc." ("PAI"), a Texas corporation.  Thus, PAI was to be the insured. The public records of the State of Texas show that Sara Garza and co-Plaintiff Efren Garza are officers/directors of PAI.  In accordance with the Application, the Policy was issued in the name of "Pizza Alley, Inc."[1]

5.      Pertinent to this Removal, (a) the Plaintiffs' alleged damage emanates/emanated from the Storm and thus, one event/occurrence; (b) both Plaintiffs are allegedly insureds under the one Hudson Policy; (c) their claims arise from alleged damage to the same properties, which they allegedly jointly own; (d) the properties are believed to be conjoined buildings and may be part of the same structure; and (e) the Petitions which the Plaintiffs filed in State Court are identical except for one sentence which identifies the properties.

---

[1] While "Pizza Alley, Inc." is not a party Plaintiff in the lawsuits which the Plaintiffs filed in State Court, this corporation was incorporated under the laws of the State of Texas and information obtained from the Texas Secretary of State shows that its principal place of business is located in Penitas, Texas.

6.      Nevertheless, in State Court, Plaintiffs splintered their claims into two separate lawsuits:  Cause No. C-2899-17-J and Cause No. C-2901-17-F (sometimes collectively referred to as "the suits" or "the lawsuits").  In their suits, Plaintiffs allege identical claims, seeking benefits under the Policy and recovery for extra-contractual claims based on alleged violations of the Texas Insurance Code (alleged Unfair Settlement Practices and Prompt Payment of Claims Act), breach of the duty of good faith and fair dealing, and fraud.  Plaintiffs seek recovery of (a) actual damages, which they allege include the loss of benefits that should have been paid under the Policy, and mental anguish; (b) "three times their actual damages" under Texas Insurance Code Section 541.152; (c) statutory penalties under Texas Insurance Code Section 542.060; (d) attorney's fees; and (e) exemplary damages.

7.      As part of each State Court Petition, Plaintiffs attached a "Binding Stipulation" in which they represented that their total damages in each suit do not exceed $75,000, exclusive of interest and costs.

8.      As demonstrated below, because the Plaintiffs' claims under the Hudson Policy are "common and undivided," the Plaintiffs' claims/damages should be aggregated for purposes of the amount in controversy in regard to diversity jurisdiction.   Under their Stipulations, *when aggregated*, Plaintiffs seek damages which do not exceed $150,000, exclusive of interest and cost.  And since the Stipulations, when aggregated, do not state an amount in controversy below the statutory threshold, Hudson *independently* shows that the Plaintiffs' claims exceed the $75,000 threshold, exclusive of interest and costs.

### III.
### The Notice of Removal Is Timely And Properly Filed

9.      The Plaintiffs' suits are civil actions within the meaning of the Acts of Congress relating to removal of causes.

3

10.     This removal is timely; this Notice of Removal of Cause No. C-2899-17-J is filed within 30 days of service upon Hudson of the initial pleading(s) setting forth the claims for relief upon which the action is based.  28 U.S.C. § 1446(b); see Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347-348 (1999) (30 day period for removal does not begin to run until a defendant party has been properly served).  Concurrently herewith, Hudson is also filing its Notice of Removal of the Plaintiffs' other lawsuit – Cause No. C-2901-17-F.

11.     Under U.S.C. § 1446(a), the United States District Court for the Southern District of Texas, McAllen Division, is the proper forum in which to file this Notice of Removal because it is the Federal District Court and Division that embraces Hidalgo County, Texas, where Cause No. C-2899-17-J was filed.

12.     The removing party, Hudson, is the sole Defendant; therefore, no further consent is required.

13.     Concurrently with this Notice of Removal, Defendant Hudson is also filing a copy of this Notice (without the attached exhibits) in the 430th Judicial District Court in which Cause No. C-2899-17-J was filed.

## IV.
## Statement Of Jurisdiction:  This Removal Is Proper
## Under 28 U.S.C. § 1332(a) And 28 U.S.C. § 1441(a)

14.     Removal of the lawsuit is proper under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441 because there is complete diversity of the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs.  Plaintiffs are individuals and according to their Petition, they reside in Hidalgo County, Texas; therefore, they are citizens of Texas for diversity of jurisdiction purposes.  Coury v. Prot, 85 F.3d 244, 248-250 (5th Cir. 1996).  Hudson is a corporation which was incorporated in the State of New York and it maintains its principal place of business in the

State of New York; therefore, it is a citizen of New York.  28 U.S.C. § 1332(c)(1).  Accordingly, there is complete diversity because neither Plaintiff is a citizen of the same State as Hudson.

15.     As to the amount in controversy, when properly aggregating the Plaintiffs' claims and damages, the amount in controversy exceeds $75,000, exclusive of interest and costs.  It is well established that the claims and damages of multiple plaintiffs can be aggregated when they "unite to enforce a single title or right in which they have a common and undivided interest."  Troy Bank v. G.A. Whitehead & Co., 22 U.S. 39, 40-41, 32 S.Ct. 9, 56 L.Ed. 81 (1911).  In assessing whether claims are "common and undivided," the Fifth Circuit has instructed that two of the primary factors to consider are whether (a) whether the Plaintiffs' respective rights to damages arise from the same legal source such that they are "integrated"; and (b) the defendant has an interest in the apportionment of the award among the plaintiffs; in other words, will a recovery by one will affect the recovery by others.  See Allen v. R&H Oil & Gas Co., 63 F.3d 1326, 1331 (5th Cir. 1995).  As to the latter factor, in Allen, the Fifth Circuit cited a Sixth Circuit case in stating that "[a]n identifying characteristic of a common and undivided interest is that if one plaintiff cannot or does not collect his shares, the shares of the remaining plaintiffs are increased."  Id. at 1331, n. 7 (citing and quoting Sellers v. O'Connell, 701 F.2d 575, 579 (6th Cir. 1983)).

16.     Further, even when plaintiffs seek to enforce a *common interest* that may be separable amongst themselves, the Fifth Circuit has recognized that "the common nature of the plaintiffs' interests *vis-à-vis* the defendant dictates that aggregation is proper."  Allen, 63 F.3d at 1331 (citing and quoting 1 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, ¶ 0.97(3) at 921 (2d ed. 1995)).  It has also been recognized that aggregation is proper when several plaintiffs sue as joint owners of property.  Cawley, 73 Notre Dame Law Rev. 1045, 1048 (citing Jack H. Friedenthal, et al Civil Procedure § 2.9 at 48-49 & n. 5 (2d ed. 1993)).

17.     In <u>Phillips Petroleum Co. v. Taylor</u>, 115 F.2d 726 (5th Cir. 1940), several mineral interest owners all filed suit under a mineral lease for damages due to the breach of an implied covenant of the lease in regard to the drainage of oil and gas concerning the property in which they held their interest.  <u>Id.</u> at 727.  The Fifth Circuit held that their claims and damages should be aggregated for purposes of the amount in controversy because they had united to "enforce a single title or right in which they [had] a common and undivided interest," finding that (a) the plaintiffs' interests derived from the same source (the mineral lease); (b) the defendant's liability was based on the lease; and (c) the defendant was interested in the total amount of oil and gas drainage (<u>i.e.</u> the total damages of the plaintiffs, collectively), not the division of it to be made between the plaintiffs.  <u>Id.</u> at 727-728.

18.     In <u>John Hunter, Inc. v. Great Impressions Apparel</u>, 313 F.Supp.2d 644 (N.D. Tex. 2002), where sportswear salespersons all sued to collect unpaid commissions under the same oral contract, the Court recognized that "[a]ggregation of damages is allowed where plaintiffs are enforcing a single right, arising from the same legal source."  <u>Id.</u> at 647.  The Court then found that the plaintiffs' claims should be aggregated because their entitlement to recover was based on a single legal source:  "the plaintiffs' interests are derived from the same oral contract in a suit together to enforce that contract."  <u>Id.</u> at 647-648; <u>see also</u> <u>Phoenix Ins. Co. v. Woosley</u>, 287 F.2d 531, 532-534 (10th Cir. 1961) (where insured suffered a total grocery inventory loss due to a fire and he then assigned his rights against his two insurers to nine creditors, the Tenth Circuit held that the insured's clams and those of his creditors/assignees should be aggregated because they all had a common interest in the collection of the insurance:  it was the source of payment of the insured's debt and the collection source for the assignees).

17.     In <u>Phillips Petroleum Co. v. Taylor</u>, 115 F.2d 726 (5th Cir. 1940), several mineral interest owners all filed suit under a mineral lease for damages due to the breach of an implied covenant of the lease in regard to the drainage of oil and gas concerning the property in which they held their interest.  <u>Id.</u> at 727.  The Fifth Circuit held that their claims and damages should be aggregated for purposes of the amount in controversy because they had united to "enforce a single title or right in which they [had] a common and undivided interest," finding that (a) the plaintiffs' interests derived from the same source (the mineral lease); (b) the defendant's liability was based on the lease; and (c) the defendant was interested in the total amount of oil and gas drainage (<u>i.e.</u> the total damages of the plaintiffs, collectively), not the division of it to be made between the plaintiffs.  <u>Id.</u> at 727-728.

18.     In <u>John Hunter, Inc. v. Great Impressions Apparel</u>, 313 F.Supp.2d 644 (N.D. Tex. 2002), where sportswear salespersons all sued to collect unpaid commissions under the same oral contract, the Court recognized that "[a]ggregation of damages is allowed where plaintiffs are enforcing a single right, arising from the same legal source."  <u>Id.</u> at 647.  The Court then found that the plaintiffs' claims should be aggregated because their entitlement to recover was based on a single legal source:  "the plaintiffs' interests are derived from the same oral contract in a suit together to enforce that contract."  <u>Id.</u> at 647-648; <u>see also</u> <u>Phoenix Ins. Co. v. Woosley</u>, 287 F.2d 531, 532-534 (10th Cir. 1961) (where insured suffered a total grocery inventory loss due to a fire and he then assigned his rights against his two insurers to nine creditors, the Tenth Circuit held that the insured's clams and those of his creditors/assignees should be aggregated because they all had a common interest in the collection of the insurance:  it was the source of payment of the insured's debt and the collection source for the assignees).

19.     The principles of aggregation apply with equal force to multiple plaintiffs who file multiple suits in an effort to avoid federal court jurisdiction.  See e.g., Freeman v. Blue Ridge Paper Products, Inc., 551 F.3d 405 (6th Cir. 2008).  In Freeman, in the context of claims asserted under the Class Action Fairness Act ("CAFA"), the plaintiffs attempted to divide their claims into five separate lawsuits and the appellate court recognized that "where a recovery is expanded, rather than limited, by virtue of splintering…lawsuits for no colorable reason, the total of such identical splintered lawsuits may be aggregated."  Id. at 409.  And the Sixth Circuit then held that the plaintiffs' damages should be aggregated for purposes of the amount-in-controversy under CAFA since there was no colorable basis for dividing up the claims and relief into separate suits and separate time periods, other than an attempt to avoid federal court jurisdiction.  See id.

20.     Here, the following factors dictate that the Plaintiffs' claims and damages in their suits should be aggregated for purposes of the amount in controversy:

(a)     As alleged joint owners, Plaintiffs seek recovery for the alleged damage to their property/properties as a result of one event/occurrence – the Storm;

(b)     Plaintiffs allege that they are both insureds under the same Hudson Policy;

(c)     Both Plaintiffs seek recovery under the same Hudson Policy and their alleged entitlement to recover derives from the same legal source:  the Hudson Policy;

(d)     The Plaintiffs' claim arises from the alleged damage to the property/properties, which Hudson believes are conjoined buildings and may be part of the same structure;

(e)     Because there is no distinction in the alleged property damage or the amount of the alleged property damage as between the Plaintiffs, they have a joint and common interest in their attempt to recover benefits under the Hudson Policy for such damage;

(f)     Without admitting or conceding that either Plaintiff is an insured under the Hudson Policy, if Hudson were to make payment to one

Plaintiff for the damage/loss covered under the Policy, this would negate the other Plaintiff's ability to recover.  Stated differently, if Hudson were to make an acceptable payment toward the alleged damage to the property/properties, this would extinguish both Plaintiffs' claims for benefits under the Hudson Policy;[2]

(g)    Without admitting or conceding that either Plaintiff is an insured under the Hudson Policy, if Hudson were to make payment for the alleged damage to the property/properties, it (Hudson) would have no interest in how such payment may be divided amongst/between the Plaintiffs;

(h)    Plaintiffs' two separate lawsuits are entirely identical, except for one sentence which identifies the properties; and

(i)    Since the Petitions are identical and the Stipulations inevitably show that the Plaintiffs are attempting to avoid federal court jurisdiction, it can be inferred that the Plaintiffs splintered their claims into separate lawsuits for no legitimate reason other than to avoid removal/federal court jurisdiction.

21.    When aggregating the Plaintiffs' claims, under their Stipulations, they collectively seek damages which do not exceed the $150,000.  Thus, the amount in controversy exceeds the $75,000 threshold.

22.    Beyond this, since the Stipulations, *when aggregated*, do not state an amount in controversy below the statutory threshold, Hudson *independently* demonstrates that the Plaintiffs' claims exceed the $75,000 threshold, exclusive of interest and costs.  Hudson accepts and relies on the Plaintiffs' Stipulations that their claims, combined, will not exceed $150,000, exclusive of interest and costs. It is well established that a pre-suit settlement demand or settlement negotiations can be considered in assessing the amount in controversy.  Puente v. State Farm Lloyd's, 2016

---

[2] Hudson points-out neither Plaintiff, individually, is an insured under the Policy; thus, Hudson owed no duty to either Plaintiff in their individual capacity(ies).  See In re American Nat'l Cty. Mut. Ins. Co., 384 S.W.3d 429, 438 (Tex.App. – Austin 2012, orig. proceeding) (any duty by an insurer to its insured, common law or statutory, necessarily arises from the contractual relationship between the parties); In re Miller, 202 S.W.3d 922, 926 (Tex.App. – Tyler 200, orig. proceeding).

WL 1729532[3] at *3 (S.D. Tex. [Brownsville Div.] 2016) ("[t]he Court may consider a pre-suit demand letter in determining the value of the plaintiff's claims at the time of removal"); see St. Paul Reinsurance Co. v. Greenberg, 134 F.3d 1250, 1254 (5th Cir. 1998). Here, the named insured of the Hudson Policy, Pizza Alley, Inc., through the counsel who filed the State Court suits, *issued a settlement demand letter for more than $75,000 in regard to each property*, which also supports that the combined/aggregated amount sought under the Stipulations will exceed $75,000. As to the property at issue in the State Court suit pertinent to this removal, the Plaintiffs' demand was for $77,771.70. (Pertinent to the aggregation of the Plaintiffs' claims, the demand for the other property [Cause No. C-2901-17-F] was $231,435.90.) A copy of the Plaintiffs' demand letter and the Affidavit of Hudson's representative authenticating such letter are collectively attached hereto as Ex. "1," see Exhibit "A" to the Affidavit.

23.     Further, while the foregoing is dispositive, as outlined above, in their identical suits, beyond actual damages, the Plaintiffs also seek recovery for statutory penalties under the Insurance Code, treble damages, attorney's fees, and exemplary damages – all of which are included in the amount in controversy.[4] Puente, 2016 WL 1729532 at *3-*6; St. Paul Reinsurance Co., 134 F.3d at 1255 (Insurance Code statutory penalties); Louque v. Allstate Ins. Co., 34 F.3d 776, 779 (5th Cir. 2002) (attorney's fees); Alvarado v. State Farm Lloyds, 2016 WL 6110677 at *2 (S.D. Tex. [Brownsville Div.] 2016) (treble damages under the Texas DTPA included an amount in controversy calculation). Here, since the Plaintiffs' Stipulations, when aggregated, and their pre-

_____

[3] The Report and Recommendation of Magistrate Judge Ronald Morgan, found at 2016 WL 1729532, was adopted by the District Court. Puente v. State Farm Lloyd's, 2016 WL 1733472 (S.D. Tex. Brownsville Div. [District Judge Andrew Hanen] 2016).

[4] Under Texas law, a party is prohibited from recovering exemplary damages if he "elects to have his recovery multiplied under another statute." Tex. Civ. Prac. & Rem. Code § 41.004(b). Thus, if an amount-in-controversy calculation includes a multiplying factor of actual damages, the same calculation cannot include an award of exemplary damages. See Puente, 2016 WL 1729532 at *5.

suit demands as to the properties makes it clear that the amount in controversy exceeds the $75,000 statutory threshold, Hudson does not submit a possible damage model/calculation which further accounts for the Plaintiffs' seeking recovery of Insurance Code statutory penalties, treble damages, attorney's fees, and exemplary damages.

### V.
### This Notice Of Removal Complies
### With The Procedural Requirements

24.     Pursuant to 28 U.S.C. Section 1446(d), the Plaintiffs, via their counsel, are given notice of this Removal and a copy of this Notice is being filed in the State Court.

25.     Pursuant to Local Rule 81, Hudson attaches the following pleadings/documents:

Exhibit "1"     Includes Plaintiffs' Demand Letter pertaining to 101 Main Street, Penitas, Texas 78576 (State Court Cause No. C-2899-17-J) and Authenticating Affidavit; see Exhibit "A" to the Affidavit;

Exhibit "2"     Plaintiffs Efren Garza and Sara Garza's Original Petition with accompanying Interrogatories, Requests for Production and Request for Disclosure;

Exhibit "3"     Executed Service of Process upon the Secretary of State;

Exhibit "4"     Defendant Hudson Specialty Insurance Company's Original Answer and First Amended Answer;

Exhibit "5"     Docket Sheet of the State District Court;

Exhibit "6":    Index of Matters Being Filed;

Exhibit "7":    List of Counsel of Record; and

Exhibit "8":    Notice of Remand filed with the State District Court.

As to counsel of record, for the Court's convenience, Hudson informs the Court that Plaintiffs are represented Mark J. Phipps and J. Gabriel Ortiz, Phipps, LLP, located at The Phipps, 102 9th Street, San Antonio, Texas 78215. Plaintiffs' counsel contact information is as follows: Telephone:

10

(210)   340-977   and   Facsimile   (201)   340-9887;   Email:   gortiz@phippsllp.com;   and

rsoliz@phippsllp.com.

# VI.
## Conclusion

26.     Based on the foregoing, removal of Cause No. C-2899-17-J is proper.   As

demonstrated above, this Court has jurisdiction under 28 U.S.C. § 1332(a) and the procedural

requirements have been met in regard to this removal.

27.     While Hudson properly refers to the Plaintiffs' allegations and their Binding

Stipulation for purposes of the amount in controversy, in filing this Notice of Removal, Hudson

does not admit to or concede to the Plaintiffs' allegations and Hudson does not waive any claims,

rights, defenses, motions, etc.   No statement herein or omission herein shall be deemed to

constitute an admission or concession by Hudson of any of the allegations contained in or the

damages sought by Plaintiffs in their Petition.

Respectfully submitted,


By     /s/ Ken E. Kendrick
       **KEN E. KENDRICK**
       Federal I.D. No. 6244
       State Bar No. 11278500
       kkendrick@ksklawyers.com
       **STEVE E. COUCH**
       Federal I.D. No. 12298
       State Bar No. 04875650
       scouch@ksklawyers.com

       **ATTORNEY-IN-CHARGE FOR DEFENDANT
       HUDSON SPECIALTY INSURANCE
       COMPANY**

OF COUNSEL:

**Kelly, Sutter & Kendrick, P.C.**
3050 Post Oak Blvd., Suite 200
Houston, Texas 77056
713-595-6000 - Telephone
713-595-6001 - Facsimile

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on the 11th day of August, 2017, a true and correct copy of this pleading/motion/instrument was served upon counsel for Plaintiff via ECF and Certified Mail Return Receipt Requested as follows:

Martin J. Phipps
J. Gabriel Ortiz
Phipps, LLP
102 9th Street
San Antonio, Texas 78215

_____/s/ Ken E. Kendrick_____
**KEN E. KENDRICK**